FILED

NOV - 1 2007
Nov. 1, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | JUDGE FILIP |
| | ) | No. 07 CR 721 |
| vs. | ) | Violations: Title 18 United |
| | ) | States Code, Section 1341; |
| ARTHUR DEEREY and | ) | Title 47, United States Code, |
| DANIEL DEEREY | ) | Sections 605(a) and (e)(4); and |
| | ) | Title 17, United States Code, |
| | ) | Sections 1201 and 1204 |

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1.     At time material to this indictment:

       a. DirecTV, Inc. (hereinafter "DirecTV") was a California corporation engaged in the business of delivering satellite television programming to its subscribers. DirecTV delivered television programming to the homes and businesses of its subscribers in the United States equipped with DirecTV satellite signal receiving equipment. That equipment included a satellite dish (hereinafter "Dish"), an integrated receiver/decoder (hereinafter "Receiver") and a DirecTV access card (hereinafter "Access Card") which is necessary to operate the Receiver.

       b.     Consumers who purchased DirecTV equipment could subscribe to various packages of DirecTV programming for which the subscriber paid a periodic fee, usually monthly. A subscriber also could order pay-per-view events and movies.

       c.     DirecTV contracted with and paid program providers such as cable networks, motion picture distributors, sports leagues, event promoters, and other programming rights holders, for the right to distribute their programming to its subscribers.

d. All programming distributed by DirecTV was delivered to DirecTV's broadcast centers in Castle Rock, Colorado, and Los Angeles, California. At the broadcast centers DirecTV digitized and compressed the programming. The resulting signal was encrypted, that is, electronically scrambled by DirecTV to prevent unauthorized reception. DirecTV then transmitted the signal to five satellites located in stationary orbit approximately 22,300 miles above the equator.

e. The satellites relayed the encrypted signal back to earth where it could be received by DirecTV's subscribers. The satellite signal was received by each subscriber's Dish and transmitted by wire to the Receiver. The Receiver acted like a computer to process the incoming signal using information from the credit card sized Access Card.

f. Each Access Card contained a computer chip with copyrighted software and a unique electronic identifying number. The Access Card controlled which DirecTV programming the subscriber received unscrambled based on the programming package purchased by the subscriber. It also captured and transmitted to DirecTV the subscriber's pay-per-view orders.

g. The Receiver contained a computer microprocessor and proprietary verification software. This proprietary verification software made a comparison approximately every eight seconds between a unique code transmitted continuously with each DirecTV program and an authorization code generated using the Access Card to confirm that the subscriber was authorized to receive that program.

h. Various illicit devices were produced and sold to allow the unscrambling of DirecTV programming without authorization from or the payment of subscription fees to DirecTV. These devices were used to modify the Access Cards and provide materially false information to the

2

proprietary verification software contained in Receivers by misrepresenting the authorized programming status of the Access Card.

     i.  To combat the use of these illicit devices, DirecTV began to periodically disseminate so-called "electronic counter measures" (hereinafter sometimes "ECMs"). ECMs were electronic messages sent through the satellite data stream to deactivate the illicit Access Cards. Some of the ECMs corrupted or "looped" the "pirate" software in the illicit Access Cards to make them inoperable. The "pirate community" developed "unlooper" devices, which could restore the software in the "looped" Access Cards to allow them to again be illicitly programmed to decrypt all DirecTV's satellite signals.

     j.  To further combat the use of these illicit Access Cards, DirecTV initiated a replacement of its original Access Cards. New, more secure, Access Cards, sometimes known as "H cards" or "HU Cards" were sent to all DirecTV subscribers.

     k.  DirecTV held copyrights to its satellite television programming delivery system("the copyrighted work").

   2.  On or about November 28, 2001, the United States District Court for the Central District of California issued a temporary restraining order enjoining defendants ARTHUR DEEREY and DANIEL DEEREY from "manufacturing, importing, offering to the public, providing or otherwise trafficking" in "any and all devices designed or intended to for the purpose of circumventing DirecTV's condition access system or systems used by other direct broadcast services," specifically including "unloopers," "bootloaders," and "emulators."

   3.  On or about December 12, 2001, the United States District Court for the Central District of California issued a preliminary injunction enjoining defendant DANIEL DEEREY from

"manufacturing, importing, offering to the public, providing or otherwise trafficking" in "any and all devices designed or intended to for the purpose of circumventing DirecTV's condition access system or systems used by other direct broadcast services," specifically including "unloopers," "bootloaders," and "emulators."

4. On or about December 21, 2001, defendant ARTHUR DEEREY consented to the entry of preliminary injunction enjoining him from any actions prohibited by the temporary restraining order of November 28, 2001.

5. From in about February 2000 to at least in or about December 2002, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, and others both known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud and for obtaining property from DirecTV by means of false and fraudulent representations.

### The Scheme to Defraud

6.     It was part of the scheme that the defendants ARTHUR DEEREY and DANIEL DEEREY did sell and distribute devices, the primary and intended purposes of which were to assist in the decryption of all DirecTV satellite television programming without payment of the required subscription fees and pay-per-view fees. These devices (hereinafter sometimes referred to as the "Devices") included Access Cards, "unloopers", "HU loaders", "emulators" and other related devices.

    a. The "unloopers" were devices designed to modify DirecTV "H Cards" that previously had been deactivated by an electronic counter measure in order that those Access Cards

4

could be reprogrammed to enable viewing of all DirecTV channels without payment of the required subscription fees or pay-per-view fees to DirecTV.

      b.  The "HU loaders" were devices designed to modify DirecTV "HU Cards" to enable viewing of all DirecTV channels without payment of the required subscription fees or pay-per-view fees to DirecTV.

      c.  The "emulators" were printed circuit boards designed for use with an Intel based computer and special software to emulate a DirecTV "H Card", which allowed a user to view all DirecTV channels without payment of the required subscription fees or pay-per-view fees to DirecTV.

    7.  It was further part of this scheme that defendants ARTHUR DEEREY and DANIEL DEEREY intended that the purchasers of their Devices, specifically the HU Loaders and unloopers, would be used by the purchasers to modify the Access Cards and provide materially false information to the proprietary verification software contained in Receivers by misrepresenting the authorized programming status of the Access Card. This enabled the purchasers to decrypt DirecTV's satellite television programming without payment of the required subscription fees or pay-per-view fees.

    8.  It was further part of the scheme that the defendant ARTHUR DEEREY purchased wholesale quantities of the Devices from various manufacturers, including Company A and Individual A.

    9.  It was further part of the scheme that the defendant ARTHUR DEEREY advertised the Devices on various Internet websites, including www.dss-stuff.com, www.dss-islands.com, and www.hcard.org, for purposes of selling and distributing those Devices.

10.    It was further part of the scheme that the defendants ARTHUR DEEREY and DANIEL DEEREY and others acting in concert with the defendants and with the defendants' knowledge received orders for the Devices via the telephone and via electronic mail messages from individuals in Illinois and elsewhere.

11.    It was further part of the scheme that the defendants ARTHUR DEEREY and DANIEL DEEREY contracted with fulfillment services which would be responsible for shipping Devices to the purchasers.

12.    It was further part of the scheme that the defendants ARTHUR DEEREY and DANIEL DEEREY, or agents acting at their direction, collected the payments for the sold Devices through Internet based payment services and through Cash on Delivery ("COD") shipments of the Devices.

13.    It was further part of the scheme that, following the preliminary injunction ordered on or about December 12, 2001, defendant DANIEL DEEREY opened numerous bank accounts under various business names including Global Rain Equities dba BBS Companies, Global Rain Equities dba Bayview Holdings, Inc., and Global Rain Equities, dba Arizona Computer Corp, to deposit the proceeds of the sales of the Devices advertised on www.hcard.org. Defendant DANIEL DEEREY would then close these accounts, after several months, to disguise the defendants' involvement with www.hcard.org.

14.    It was further part of the scheme that the defendants ARTHUR DEEREY and DANIEL DEEREY sold and distributed thousands of Devices, including at least approximately 5,431 Devices on www.hcard.org.

6

15.    It was further part of the scheme that the defendants ARTHUR DEEREY and DANIEL DEEREY transferred some proceeds from the sales of the Devices to various offshore accounts they controlled, including accounts at financial institutions located on the island of Grenada.

16.    It was further part of the scheme that in or about December 2002, the defendant ARTHUR DEEREY requested Individual B to process approximately 60 credit card orders for purchases made by www.hcard.org customers, which included orders by customers in the Northern District of Illinois.

17.    On or about November 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by the private commercial carrier, according to the directions thereon, an access device card reprogramming device, commonly referred to as an "HU Loader", addressed to Individual AR at 10045 Avenue M,, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1341.

7

## Count Two

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    The GRAND JURY realleges and incorporates by reference paragraphs 1 through 16 of Count One of the Indictment.

2.    On or about November 4, 2002, at Tinley Park, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by the private commercial carrier, according to the directions thereon, an access device card reprogamming device, commonly referred to as an "HU Loader", addressed to Individual JD at 17129 Oriole Avenue, Tinley Park, Illinois;

In violation of Title 18, United States Code, Section 1341.

8

## Count Three

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.      The GRAND JURY realleges and incorporates by reference paragraphs 1 through 16 of Count One of the Indictment.

2.      On or about November 7, 2002, at Romeoville, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by the private commercial carrier, according to the directions thereon, an access device card reprogamming device, commonly referred to as an "HU Loader", addressed to Individual JK, 632 Briarwood Avenuen, Romeoville, Illinois;

In violation of Title 18, United States Code, Section 1341.

### Count Four

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    The GRAND JURY realleges and incorporates by reference paragraphs 1 through 16 of Count One of the Indictment.

2.    On or about November 22, 2002, at Wilmington, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by the private commercial carrier, according to the directions thereon, an access device card reprogamming device, commonly referred to as an "HU Loader", addressed to Individual PW at 412 E. Kankakee River Dr., Wilmington, IL, 606481;

In violation of Title 18, United States Code, Section 1341.

10

## Count Five

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.      The GRAND JURY realleges and incorporates by reference paragraphs 1 through 16 of Count One of the Indictment.

2.      On or about December 2, 2002, at Channahon, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and<br>
DANIEL DEEREY

defendant herein, for the purpose of executing the aforesaid scheme and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by the private commercial carrier, according to the directions thereon, an access device card reprogamming device, commonly referred to as an "HU Loader," addressed to Individual RD at 412 29534 S. Cobblestone Lane, Channahon, IL 606410;

In violation of Title 18, United States Code, Section 1341.

11

## Count Six

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.    On or about November 4, 2002, at Tinley Park, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, did intentionally sell and distribute to Individual JD an access card reprogramming device, commonly referred to as an "HU Loader," knowing and having reason to know that said device was primarily to be used for the unauthorized decryption of direct-to-home satellite television services, thereby enabling users to illegally decrypt satellite signals from DirecTV satellites and receive unauthorized regular programming, pay-per-view and other premium programming, including HBO, Showtime, and Cinemax, without paying the subscriber fees and costs normally associated with such satellite broadcast services;

All in violation of Title 47, United States Code, Section 605(a) and (e)(4).

### Count Seven

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.      The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.      On or about November 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, did intentionally sell and distribute to Individual AR an access card reprogramming device, commonly referred to as an "HU Loader," knowing and having reason to know that said device was primarily to be used for the unauthorized decryption of direct-to-home satellite television services, thereby enabling users to illegally decrypt satellite signals from DirecTV satellites and receive unauthorized regular programming, pay-per-view and other premium programming, including HBO, Showtime, and Cinemax, without paying the subscriber fees and costs normally associated with such satellite broadcast services;

All in violation of Title 47, United States Code, Section 605(a) and (e)(4).

**Count Eight**

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.      The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.      On or about November 7, 2002, at Romeoville, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, did intentionally sell and distribute to Individual JK an access card reprogramming device, commonly referred to as an "HU Loader," knowing and having reason to know that said device was primarily to be used for the unauthorized decryption of direct-to-home satellite television services, thereby enabling users to illegally decrypt satellite signals from DirecTV satellites and receive unauthorized regular programming, pay-per-view and other premium programming, including HBO, Showtime, and Cinemax, without paying the subscriber fees and costs normally associated with such satellite broadcast services;

All in violation of Title 47, United States Code, Section 605(a) and (e)(4).

14

## Count Nine

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.      The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.      On or about November 4, 2002, at Tinley Park, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, did willfully and for purposes of commercial advantage and private financial gain offer to the public, provide and traffic an access card reprogramming device, commonly referred to as an "HU Loader," to Individual JD, which has only limited commercially significant purpose other than to circumvent a technological measure that effectively controls access to a copyrighted work protected by Title 17 of the United States Code, namely, the DirecTV satellite television programming delivery system;

All in violation of Title 17, United States Code, Section 1201(a)(2)(B) and 1204.

### Count Ten

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.      The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.      On or about November 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and<br>
DANIEL DEEREY,

defendants herein, did willfully and for purposes of commercial advantage and private financial gain offer to the public, provide and traffic an access card reprogramming device, commonly referred to as an "HU Loader," to Individual AR, which has only limited commercially significant purpose other than to circumvent a technological measure that effectively controls access to a copyrighted work protected by Title 17 of the United States Code, namely, the DirecTV satellite television programming delivery system;

All in violation of Title 17, United States Code, Section 1201(a)(2)(B) and 1204.

## Count Eleven

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.    On or about November 7, 2002, at Romeoville, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, did willfully and for purposes of commercial advantage and private financial gain offer to the public, provide and traffic an access card reprogramming device, commonly referred to as an "HU Loader," to Individual JK, which has only limited commercially significant purpose other than to circumvent a technological measure that effectively controls access to a copyrighted work protected by Title 17 of the United States Code, namely, the DirecTV satellite television programming delivery system;

All in violation of Title 17, United States Code, Section 1201(a)(2)(B) and 1204.

17

## Count Twelve

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.    On or about November 22, 2002, at Wilmington, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and<br>
DANIEL DEEREY

defendants herein, did willfully and for purposes of commercial advantage and private financial gain offer to the public, provide and traffic an access card reprogramming device, commonly referred to as an "HU Loader," to Individual PW, which has only limited commercially significant purpose other than to circumvent a technological measure that effectively controls access to a copyrighted work protected by Title 17 of the United States Code, namely, the DirecTV satellite television programming delivery system;

All in violation of Title 17, United States Code, Section 1201(a)(2)(B) and 1204.

18

### Count Thirteen

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    The GRAND JURY realleges and incorporates by reference paragraphs 1 through 4 of Count One of the Indictment.

2.    On or about December 2, 2002, at Channahon, in the Northern District of Illinois, Eastern Division,

ARTHUR DEEREY and
DANIEL DEEREY

defendants herein, did willfully and for purposes of commercial advantage and private financial gain offer to the public, provide and traffic an access card reprogramming device, commonly referred to as an "HU Loader," to Individual RD, which has only limited commercially significant purpose other than to circumvent a technological measure that effectively controls access to a copyrighted work protected by Title 17 of the United States Code, namely, the DirecTV satellite television programming delivery system;

All in violation of Title 17, United States Code, Section 1201(a)(2)(B) and 1204.

19

## FORFEITURE ALLEGATION

The AUGUST 2006-2 GRAND JURY further charges:

1.      Counts One through Five of this indictment are realleged and incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982 (a)(2)(A).

2.      As a result of committing one or more offenses that Counts One through Five of this indictment allege, that is mail fraud, in violation of Title 18, United States Code, Section 1341, defendants

ARTHUR DEEREY and
DANIEL DEEREY,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all right, title, and interest they may have in any property, real and personal:

a.      that constitutes, or is derived from, or is traceable to, proceeds obtained, directly or indirectly, from the charged offenses;

b       that is used to facilitate, or is intended to be used to facilitate the charged offenses, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982.

3.      The interests of the defendants that are subject to forfeiture pursuant to Title 18, United States Code, Section 982, include but are not limited to: at least $4,236,180 in income derived from the sale of the Devices on www.hcard.org;

4.      If any of the forfeitable property described above, as a result of any act or omission by the defendants:

a.      Cannot be located upon the exercise of due diligence;

b.      Has been transferred or sold to, or deposited with, a third person;

20

c.      Has been placed beyond the jurisdiction of the Court;

d.      Has been substantially diminished in value; or

e.      Has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek

forfeiture of any other property of said defendant up to the value of the above forfeitable property;

All pursuant to Title 18, United States Code, Section 982(a)(2)(A).

A TRUE BILL:

_____

F O R E P E R S O N

_____
UNITED STATES ATTORNEY