UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
JUN 1 3 2008
JUDGE JOAN H. LEFKOW
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 721 |
| vs. | ) | Judge Joan Humphrey Lefkow |
| | ) | |
| ARTHUR J. DEEREY | ) | |

## PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant ARTHUR J. DEEREY, and his attorney, THEODORE CHUNG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.  The indictment in this case charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341 (Counts 1-5); intentionally selling and distributing an access card reprogramming device, knowing that such device was primarily to be used for the unauthorized decryption of direct-to-home satellite television services, in violation of Title 47, United States Codes, Section 605(a) and (e)(4) (Counts 6-8); and willfully trafficking an access card reprogramming device, which had only limited commercially significant purpose other than to circumvent a technological measure that controls access to a copyrighted work protected by Title 17 of the United States Code, in violation of Title 17, United States Code, Section 1201(a)(2)(B) and 1204 (Counts 9-13).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Seven of the indictment. Count Seven charges the defendant with intentionally selling and distributing an access card reprogramming device, knowing that such device was primarily to be used for the unauthorized decryption of direct-to-home satellite television services, in violation of Title 47, United States Codes, Section 605(a) and (e)(4).

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Seven of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:    On or about November 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, defendant ARTHUR DEEREY did intentionally sell and distribute to Individual AR an access card reprogramming device, commonly referred to as an "HU Loader," knowing and having reason to know that said device was primarily to be used for the unauthorized decryption of direct-to-home satellite television services, thereby enabling users to illegally decrypt satellite signals from DirecTV satellites and receive unauthorized regular programming, pay-per-view

and other premium programming, including HBO, Showtime, and Cinemax, without paying the subscriber fees and costs normally associated with such satellite broadcast services.

Beginning in at least approximately November 2000, the defendant ARTHUR DEEREY began selling, distributing and causing the sale and distribution of access card reprogramming devices (collectively referred to as the "Devices") to end-users and to other Device distributors through on various websites, including www.dss-stuff.com, www.dss-islands.com, and www.dss-hangout.com. These Devices (which included "unloopers", "HU loaders", "emulators" and other related technology) enabled end-users who had basic DirecTV subscription packages to decrypt DirecTV satellite television programming without payment of the required subscription fees and pay-per-view fees.

On or about December 12, 2001, the United States District Court for the Central District of California issued a preliminary injunction enjoining defendant ARTHUR DEEREY from "manufacturing, importing, offering to the public, providing or otherwise trafficking" in "any and all devices designed or intended to for the purpose of circumventing DirecTV's condition access system or systems used by other direct broadcast services," specifically including "unloopers," "bootloaders," and "emulators." Despite that injunction, defendant ARTHUR DEEREY continued to sell, distribute, and cause the sale and distribution of access card reprogramming devices advertised the Devices on a website known as www.hcard.org, then knowing and having reason to know that said Devices

enabled end-users to decrypt DirecTV satellite television programming without payment of the required subscription fees and pay-per-view fees.

Once the Device were purchased on the www.hcard.org website, the Devices were shipped to the end-user through various fulfillment centers, including a fulfillment center located in Benicia California. Defendant received proceeds from the sale of these Devices.

Defendant ARTHUR DEEREY acknowledges that, from no later than December 12, 2001, until at least December 2002, sold, distributed and caused the sale and distribution approximately 5,000 Devices (distributed in approximately 3,540 different shipments) advertised on www.hcard.org, resulting in a loss of approximately $3,073,834 to DirecTV.

On or about November 4, 2002, defendant sold and caused the sale to Individual AR an access card reprogramming device, commonly referred to as an "HU Loader," knowing and having reason to know that said device was primarily to be used for the unauthorized decryption of direct-to-home satellite television services.

7. The defendant agrees that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3: From no later than December 12, 2001, until at least December 2002, defendant ARTHUR DEEREY sold, distributed and facilitated the sale and distribution of approximately 5,000 Devices (distributed in 3,540 different shipments) advertised on www.hcard.org, resulting in a loss of approximately $3,073,834 to DirecTV.

### Maximum Statutory Penalties

8.  Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a.  A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

   c.  In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.  Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a.  **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding

the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

    b.    **Offense Level Calculations.**

        i.    The base offense level for the charges in Count Seven is 8, pursuant to Guideline §2B5.3(a);

        ii.    As a result of defendant's conduct during the offense period, the defendant caused a loss to DirecTV in the amount of approximately $3,073,834. Accordingly, pursuant to Guideline 2B5.3(b)(1)(B) and 2B1.1(J), the base offense level is increased 18 levels because the amount of the loss is more than $2,500,000 but less than $7,000,000.

        iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iv.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources

efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 23, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 46 to 57 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

    e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline

7

calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraph (b) of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

## Agreements Relating to Sentencing

11. The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed. The defendant is free to recommend that the Court impose any lawful sentence that the defendant deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant agrees to pay additional restitution, arising from the offense and relevant conduct described *supra* in paragraphs 6 and 7, totaling $3,073,834, minus any credit for funds repaid prior to sentencing or otherwise recovered by DirecTV from end-users of the Devices for which defendant is accountable, to DirectTV pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment and the forfeiture allegation as to this defendant.

**Presentence Investigation Report/Post-Sentence Supervision**

16. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

## Nature of Plea Agreement

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 721.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

   i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be

conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would

be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

  c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Other Terms**

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

23. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

26. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

27. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 6/13/08

_____  _____
PATRICK J. FITZGERALD       ARTHUR J. DEEREY
United States Attorney      Defendant

_____  _____
STEPHEN A. KUBIATOWSKI      THEODORE CHUNG
Assistant U.S. Attorney     Attorney for Defendant